## The State v. Phillips, *Appellant.*

### Division Two, June 27, 1893.

1. **Criminal Law**: AIDING AND ABETTING MURDER IN SECOND DEGREE: INSTRUCTIONS. One indicted for aiding and abetting another in the commission of a murder in the second degree cannot be convicted of manslaughter.

2. **Manslaughter**: ACCESSORIES BEFORE THE FACT. There can be no accessories before the fact in manslaughter.

3. **Criminal Practice**: OPINION OF JUROR. The objection, that one of the jurors was heard, prior to the trial, to express an opinion that defendant was guilty, comes too late after verdict, where it does not appear that defendant was ignorant of such opinion.

4. ———: REMARKS OF PROSECUTING ATTORNEY: HARMLESS ERROR. The fact that, on the trial of one for aiding and abetting a murder in the second degree, the prosecuting attorney stated in the argument to the jury that the principal had been convicted and sent to the penitentiary, will not constitute reversible error where it appears that the court reproved the attorney and told the jury they had nothing to do with the conviction of the principal where it further appeared that the latter's conviction was well known in the community and his name had been frequently and of necessity mentioned during the trial as one of the codefendants in the charge.

5. ———: ———: ———. An inquiry by the prosecuting attorney as to where the principal then was, to which the witness replied, "In the penitentiary I guess," would not, for the same reason, cause a reversal of the judgment.

*Appeal from the Barry Circuit Court.*—Hon. Joseph Cravens, Judge.

Affirmed.

*Piper, Wear & Plummer* for appellant.

*R. F. Walker*, Attorney General, and *Morton Jourdan*, assistant for the state.

(1) The instructions covered the whole case and properly declared the law. (2) No reversible error

was committed by the prosecuting attorney in his argument to the jury.. (3) The objections to the juror, Johnson, were not made in time nor were the objections to him properly saved. *State v. Brewer*, 109 Mo. 652. (4) The court properly admitted the threats of Brown, the associate of the defendant in the crime. *State v. Glahn*, 97 Mo. 679; *State v. Grant*, 79 Mo. 113; *State v. Dickson*, 79 Mo. 438; *State v. McNally*, 87 Mo. 644.

SHERWOOD, J.—The defendant was convicted of murder in the second degree and her punishment assessed at ten years imprisonment in the penitentiary, and she appeals.

The indictment upon which this conviction was had charged that Caleb Brown and Celia A. Phillips did, "on purpose and of their malice aforethought, willfully, deliberately, premediately shoot and kill one Wm. H. Phillips"; the second count, "that Caleb Brown did, on purpose and of his malice aforethought, willfully, deliberately, premediatedly shoot and kill said W. H. Phillips," and "that Celia A. Phillips then and there feloniously, willfully, deliberately, premeditatedly and of her malice aforethought was present, aiding, helping, abetting, assisting, comforting and maintaining said Caleb Brown in the felony and murder." ·

The parties charged were separately arraigned and tried, and it seems Brown, being first tried, was convicted of murder in the second degree and his punishment also assessed at ten years' imprisonment in the penitentiary.

The defendant was, or had been, a married woman and had several children. About a month prior to the homicide, Brown came there and domesticated himself on the premises; made himself at home. Deceased used to enjoy similar favors, and these, it seems, were

foreclosed by the advent of Brown, and this it appears was the cause of hostilities between the parties, as, since Brown's coming, defendant had refused to live with deceased any more.

It is disclosed in evidence that the reputations of Brown, of defendant, and Phillips, the deceased, were bad. Hard feeling existed between Phillips and Brown and Phillips and defendant. Brown had made threats against Phillips, and *vice versa*, and Phillips had threatened, and made threats against, defendant.

On the previous day, Brown had ordered John Phillips, a son of deceased, to stop passing' on the road by the house. The next morning, the twelfth of March, the son having occasion to. go to the town of Golden to have some bolts repaired, and, mindful of the order given him the day before by Brown, took his shot gun along with him to town. Arrived there he found his father, who had gone there at an earlier hour in the day.

Phillips and his son, in the afternoon, proceeded homeward, their home being some two and a half miles from Golden, and a short distance beyond that of defendant. Their route lay past the house of defendant. The father, it seems, was considerably under the influence of liquor. The evidence discloses that Brown and defendant in the afternoon of that day went out to a little clearing close by the house ostensibly to cut and burn brush; but each of them was armed with a shot gun and they evidently anticipated trouble.

When Phillips and his son came in sight of Brown and defendant, Brown lit a match and applied it to the leaves of a brush pile close by the road, and defendant threw on a handful of brush. When Brown and defendant saw Phillips and his son coming, they picked up their guns, which were leaning against a small sapling a few feet distant, and defendant then got in

the road behind Phillips and his son, crossed it, and then walked in ahead of them and took position behind a tree with her gun to her shoulder, and pointed in the direction of the son.

Meanwhile Brown had said something to Phillips which it would seem that neither he nor his son understood, for the former turned his horse around and asked, "what?" and started towards Brown, saying that "he did not want to have any trouble, that there was no use of having any trouble;" but when he got about even to where Brown was standing with his shot gun in both hands, the latter fired, instantly killing Phillips, who fell in the road, and his pistol was found in the road a few minutes afterwards close to the body of deceased; but the son had not seen the pistol until that time. The son, Jno. Phillips, at that time had his gun across his saddle in the usual way, and when defendant took her position and deceased rode towards Brown, defendant pointed her gun at the son, and told him if he touched his gun she would kill him. This is the story as told by the son of deceased.

That told by defendant is quite different. She testified that, knowing the threats made to and against her by Phillips, and fearing that Phillips would be drunk and raise a difficulty when he and his son returned from town, she and Brown took their guns out with them when they went to work, as she had looked for trouble all the while; that Phillips and his son came in sight, and when they got pretty close Phillips pulled off his hat, uttered some profane and obscene expression, and she picked up her gun and started for the house in order to look for her child who had been out there with her, but had disappeared, when Phillips charged on her with his horse, and she stepped behind a tree, and told John to take his father home. Thereupon Phillips said: "Ann, you have got

a God d———d horse thief here," and defendant said something which seemed to touch his feelings, when he said, "Ann, you are not to blame, yonder is the d———d ——— ——— I want," and charged back on Brown, and the latter picked up his gun, stepped back a few steps, and shot him. When Phillip's "charged back on Brown," as defendant expresses it, she says he had his pistol drawn in his left hand.

There was also testimony on the part of the state to the effect that, before the coroner's jury, defendant had testified that the reason she and Brown took their guns out with them that afternoon, was that they allowed Phillips would come by there drinking, raise a fuss, and then if he did, they aimed to kill him. The foregoing is the substance of the evidence found in the record. Other points which arose during the trial will be mentioned hereafter.

I. The instructions given by the court, of its own motion, covered the theories of murder in the first and second degrees and of self-defense; those on the last-named theory were extremely favorable to defendant.

Defendant is not represented in this court by counsel, but it is contended in the motion for a new trial that an instruction should have been given for a lower grade of homicide than murder in the second degree.

It would have been error had the court so instructed, because the defendant was charged with aiding and abetting Brown in the murder of Phillips; and in such circumstances, if guilty at all, she could not have been guilty of any less degree of homicide than the crime of which she was convicted, as in manslaughter there can be no accessories. Hale says: "In manslaughter there can be no accessories before the fact, for it is presumed to be sudden, for if it were with advice, command, or deliberation, it is murder and

not manslaughter, and the like of *se defendendo*. And, therefore, in an indictment of manslaughter only, if others be indicted as accessories before the fact, the indictment is void against them. And if A. be indicted of murder, and B. as accessory before by procurement, etc., and A. is found guilty only of manslaughter, B. shall be discharged. 4 Co. Rep. 43, b; *Goffe v. Bibithe and Hoell David.*" 1 Hale, P. C. 437.

II. No error occurred in regard to the juror, Johnson, who was on the panel that tried defendant. It is true that affiant Harris makes oath that, prior to the trial, he heard Johnson express the view that defendant was guilty, etc.; but it nowhere appears but that this fact was known to defendant or to her counsel prior to her trial. For all that appears, this was thus known, and if so, it was too late to raise the objection after the trial was over. See *State v. Burns*, 85 Mo. 47, where the point was expressly ruled.

III. On argument before the jury, one of the counsel for the prosecution made the statement "that Brown had been convicted and sent to the penitentiary for ten years." Upon objection made to this statement the court reproved the attorney and told the jury that they had nothing to do with the fact that Brown was in the penitentiary. In such circumstances it should not be held that reversible error has occurred, especially so, as the fact of Brown's conviction must have been well known in the community. Indeed, Brown's name was frequently and of necessity mentioned during the trial as one of the co-indictee's in the case, and mentioned also in the indictment and in the instructions.

IV. On the score of defendant being indicted as the aider and abettor of Brown, and of the evidence supporting that charge, and that she and Brown were acting in concert, evidence of threats by Brown was clearly admissible.

V. The question was asked by the state's attorney: "Do you know where Brown is now?" The witness thereupon replied: "In the penitentiary, I guess." Defendant's counsel should have objected to this question, as they might have done before the answer came; but for reasons already stated we should not be inclined to reverse the judgment on this account.

Finding no material error in the record, judgment affirmed. All concur.