# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FIRST DISTRICT—MARCH TERM, 1897.

## Michael C. McDonald v. Fort Dearborn National Bank.

1. TRIALS—*Arguments of Counsel.*—Much latitude must be allowed to counsel in their arguments to a jury, and it is only in cases where it is plain that injustice has resulted from them, that judgments will be reversed because of statements made in an argument.

2. SAME—*Remarks by the Court in Regard to the Evidence.*—The credibility of witnesses is solely for the consideration of the jury, and it is highly important that the trial judge should not, in anything said by him in the presence of the jury, usurp the functions of that body.

**Assumpsit,** on a promissory note. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the March term, 1897. Reversed and remanded. Opinion filed June 14, 1897.

A. B. JENKS and EDWARD MAHER, attorneys for appellant.

FLOWER, SMITH & MUSGRAVE, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The appellant was a member of a copartnership firm, composed of one Michael J. Tierney and himself, doing business as M. J. Tierney & Co., "in the manufacture, buying and selling of all goods relating to machinists' supplies and everything to said business belonging."

In the articles of such copartnership, dated July 1, 1889, it was agreed that one Edward S. McDonald should represent the interest of appellant in the firm, and should act at all times as the agent of appellant in the management of the business, and sign all checks, notes, drafts and acceptances relating to said business.

About a year after the formation of that partnership, and while it was continuing to do business, another partnership known by the name of the Globe Steam Heating Company was formed by the said Michael J. Tierney, the said Edward S. McDonald and one B. B. McGinn, for the purpose of "manufacturing, constructing, repairing and selling steam and hot water heating and ventilating apparatus." It is not claimed that the appellant was in any way connected with the last named partnership.

On or about May 27, 1892, the said Edward S. McDonald executed in the said firm name of M. J. Tierney & Co., and delivered to the appellee the promissory note sued upon, in renewal of a former note, which we assume—although we do not observe in the abstract any positive evidence of the fact—was executed by said Edward S. McDonald in the same firm name.

To this suit upon said note, dated May 27, 1892, brought against appellant and said Tierney, as copartners, under said firm name of M. J. Tierney & Co., the appellant, besides the general issue, pleaded specially, denying his joint liability with said Tierney upon the alleged cause of action, and also denying that he made and delivered, or consented to or authorized the making and delivery of, or signed or authorized or consented to the execution of the note.

We refrain, as we should do if we reverse the judgment, from expressing any opinion of our own upon the weight of the evidence, but the effect of the evidence was to make the question an exceedingly close one whether appellee was not bound with notice and knowledge at the time it discounted the note, that it was given for the purposes and in the course of the business of the Globe Steam Heating Company (in which the appellant was not concerned), and

not for any purpose of the firm of M. J. Tierney & Co., in which appellant was a partner, and was paper which said Edward S. McDonald had no authority or right to make in said firm name.

The observance, therefore, by the trial court of the rules that require such questions of fact to be left to the jury, uninfluenced by any views of his own upon such issues, was plainly demanded.

The trial, for causes that do not need to be repeated, appears to have been a heated one; and during the closing argument to the jury by counsel for the appellee, the following occurred:

"Counsel for Appellee: May it please the court, and gentlemen of the jury—there are certain classes of men, gentlemen of the jury, to deal with whom is extremely dangerous. There are certain classes of men from whom it is very difficult to recover upon a promissory note made for money loaned. We have got such a case here.

Mr. Maher (for appellant): I object to that statement and take an exception.

The Court: What statement?

Mr. Maher: He is talking about people being a dangerous class of men to recover from, and that is the kind of men he has got to deal with here, and we take an exception.

Mr. Jenks (for appellant): He said on a promissory note.

The Court: The court can not see what this is going to lead up to. If there be sufficient for that statement in the proof, I do not see why it should not be made. I suppose this is why counsel opens in the way he does.

Mr. Maher: Well, we take an exception.

Mr. Smith (continuing): Among them are men who will go onto the witness stand, at the instance of their own attorneys, and shamelessly—not apparently having conscience enough to know what they are doing—swear to a jury in defense of a promissory note that, on another occasion, he signed and swore to a bill, or signed a bill which he understood was to be used as a sworn bill, signed the affidavit, and never took the pains to read what he was swearing to.

Mr. Maher: If your honor please, we again take exception to that statement, especially to that part of the statement which says that the defendant in this case went on the stand at the instance of his own attorneys.

The Court: I hope counsel will not persist in these interruptions. In my opinion this statement made by counsel is fully warranted by the evidence.

Mr. Maher: We want an exception.

The Court: Yes.

\*       \*       \*       \*       \*       \*       \*

Mr. Smith (continuing): If you gentlemen have lived in the city of Chicago a great many years and know anything about the reputation of some of our prominent citizens—of course I do not refer to anybody who is a defendant in this case—you can readily see why he did not want to be known as contracting with the school board of the city of Chicago.

Counsel for the defendant here entered an exception to the last remark of plaintiff's counsel."

In justification of such remarks by counsel for appellee as are not supported by the evidence, or the fair inferences to be drawn from it, he properly says that "matters of common and general information can be commented upon with entire propriety," citing Ency. of Pl. and Pr., Vol. 2, p. 736, Par. 6, and State v. Phillips, 117 Mo. 389; and adds, as his own: "If the matters referred to in this statement were not of common and general information, they could have had no meaning to the jury, and would therefore be harmless."

We must not be understood to assent to such a conclusion. But we would not reverse the judgment because of what counsel said. Much latitude must be allowed to counsel in their *ex tempore* arguments to a jury, and it is only in cases where it is plain that injustice has resulted from them that judgments will be reversed because of them.

It is, however, of the highest importance that the trial judge should not, in anything said by him in the presence of the jury, usurp the functions of that body.

Following immediately upon one of the exceptions entered by counsel for appellant to the remarks of counsel for appellee, that the appellant—for he was the only person who had gone upon the witness stand at the instance of his attorneys, and testified as to the signing and swearing to a bill in equity filed by himself—had testified shamelessly and without apparent conscience to matters in his defense—the court ruled and said what to the jury could scarcely have meant anything less than a concurrence by the court in the remarks and inferences of the counsel. The effect upon the jury of that ruling and remark must almost necessarily have been seriously prejudicial to the appellant. To a person skilled in grammatical rules, as applied to the interpretation of sentences and their context, the remark by the court would probably be construed to apply only to the statement that appellant had gone upon the witness stand at the instance of his own attorneys, and would be harmless.

But remembered by the jury after they had heard the rest of the argument, and the instructions, and had retired to the jury room, its effect could scarcely be less than an impeachment by the judge himself of the credibility of the testimony of the appellant who was the object of so much severity of argument.

The credibility of appellant as a witness was something that the judge might not pass upon, but was solely for the consideration of the jury. We have no doubt that the learned trial judge, knowing the rule, had no intention of going beyond it in what he said, but the question is not what he meant, but is, what did the jury think he meant?

The evidence upon the main issue was so close, if appellant's testimony might be considered by the jury uninfluenced by what the judge said in their presence, that for the court to eliminate it from the case or to discredit its credibility, was enough to decisively change the scale of preponderance and weight.

Upon the record as made we are clear that another trial of the case should be had.

The point is made that we may not consider the record

because of the neglect of appellant to argue and urge to the trial court his reasons for a new trial. The bill of exceptions shows explicitly that the only ground upon which we have based our holding that another trial should be had, was one that was included as a reason for a new trial in the court below, and was there brought to the attention of the trial judge and was considered by him in, at least, the respect of how the grounds for it should be made to appear.

It has never been held that a better argument in an Appellate Court than was made in the court below, was alone a sufficient reason for affirming or for reversing a judgment.

The judgment will be reversed and the cause remanded.